UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JESSICA TENZEN & JAMIE TENZEN,

        Plaintiffs,                     Memorandum and Order
                                              10-cv-50

  - against -

SUSAN HIRSCHFELD, ILAN HIRSCHFELD and
CAB EAST, LLC

        Defendants.
----------------------------------------------------------x
GLASSER, United States District Judge:

      Plaintiffs, Jamie Tenzen ("plaintiff" or "Tenzen") and Jessica Tenzen brought this action pursuant to New York Insurance Law § 5104(a) (the "No Fault Statute"), seeking to recover for personal injuries they allegedly sustained as a result of a car accident with defendant, Susan Hirschfeld.  This case was commenced in the Supreme Court of the State of New York, Kings County, and was thereafter removed on the basis of diversity jurisdiction to this court on January 7, 2010.  Defendants have moved for summary judgment on the grounds that: 1) Plaintiff Jamie Tenzen did not suffer a "serious injury" as required by the No Fault Statute; and 2) Plaintiff Jessica Tenzen's claim is barred by a release.  For the following reasons, defendants' motion is GRANTED IN PART.

## BACKGROUND

      The following facts are undisputed, unless otherwise noted.[1]  On the evening of October 23, 2008, Susan Hirschfeld was driving an automobile owned by defendants

---

[1] Plaintiff has not filed a Rule 56.1 statement in opposition to this motion.  "All material facts set forth in the [Rule 56.1] statement . . . by the moving party will be deemed admitted unless controverted by the

1

Ilan Hirschfeld and Cab East, LLC. Compl. ¶ 28. While traveling east on East 57th Street, New York, New York, Hirschfeld's car rear-ended a car driven by Jessica Tenzen. Compl. ¶ 30. Jessica Tenzen's sister, Jamie Tenzen, was a restrained passenger in the front seat of that car. Id. The force of the collision caused the Tenzens' car to rear-end the vehicle stopped directly in front of theirs. Affirmation of John W. Kondulis dated April 12, 2011 ("Kondulis Aff.") Ex. G at 6-17.

Immediately following the accident, Jamie Tenzen complained of a headache. Id. at 20. She was taken by ambulance to New York-Presbyterian Hospital where x-rays were taken of her neck and back, showing no fractures or other injuries. Id. at 20-22; Opp. Aff. Ex. A. She was released after approximately three hours. Opp. Aff. Ex. A. Tenzen alleges that as a result of the accident, she suffered a herniated disk in her neck, causing a permanent loss of range of motion in her neck, daily pain in her neck and shoulders, and numbness in her arms and fingers. Kondulis Aff. Ex. G.

On April 28, 2010, pursuant to a stipulation of the parties, the Court ordered the dismissal with prejudice of plaintiffs' claims against defendant Cab East, LLC. Kondulis Aff. Ex. D. Thus, the claims remaining before this Court are those brought by Jessica Tenzen and Jamie Tenzen against Susan Hirschfeld and Ilan Hirschfeld.

## JURISDICTION

Diversity of citizenship, which is not disputed, provides a basis for jurisdiction.

---

[Rule 56.1] statement required to be served by the opposing party." Loc. Civ. R. 56.1(c). However, the Court has broad discretion to overlook defendants' failure to comply with Rule 56.1 and may, at its discretion, opt to consider affidavits or other admissible evidence. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001). Here, plaintiffs have submitted sworn affirmations from physicians in opposition that meet the 28 U.S.C. § 1746 standard. Accordingly, the Court accepts as true the material facts contained in defendants' Local Rule 56.1 statement, except as they are controverted by plaintiffs' affirmations. The Court will also consider Jamie Tenzen's sworn deposition testimony.

See 28 U.S.C. § 1332(a)(1). Plaintiffs are both residents of Kings County, New York. Compl. ¶¶ 1-2. Defendants Susan Hirschfeld and Ilan Hirschfeld are citizens of New Jersey. Notice of Removal ¶ 3. Defendant Cab East LLC is a limited liability corporation incorporated in Delaware, with its principal place of business in Atlanta, Georgia. Id. Plaintiffs seek more than $75,000.00 in damages. Kondulis Aff. Ex. C. ¶ 12.

## DISCUSSION

### I. Plaintiff Jessica Tenzen's Release

As an initial matter, the Court considers defendants' motion for summary judgment as to plaintiff Jessica Tenzen. In consideration of $7,500.00, on October 26, 2009 Jessica Tenzen executed a "Release in Full of All Bodily Injury Claims Only," broadly releasing the defendants from all liability for any causes of action prior to the date of the release. Pl.'s R. 56.1 ¶ 13; Kondulis Aff. Ex. F. Plaintiffs have not opposed summary judgment on this matter. Consequently, the Court grants summary judgment for the defendants as to plaintiff Jessica Tenzen.

### II. "Serious Injury" and The New York No Fault Statute

New York substantive law governs this diversity action pursuant to well-settled principles governing the choice of law in diversity actions. Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir.1999). New York's No Fault statute for automobile accidents bars recovery for any action by or on behalf of a "covered person" against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state for economic loss. A right of recovery for non-economic loss does exist, however, "in the case of serious injury." Morrone v. McJunkin, No. 98 Civ. 2163, 1998 WL 872419, at *1 (S.D.N.Y.1998); N.Y. Ins. Law § 5104(a) (McKinney 1998). The

New York Court of Appeals has long recognized that "the legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries." Dufel v. Green, 84 N.Y.2d 795, 798, 647 N.E.2d 105, 107, 622 N.Y.S.2d 900, 902 (1995). "Tacit in this legislative enactment is that any injury not falling within the new definition of serious injury is minor and a trial by jury is not permitted under the no-fault system." Licari v. Elliott, 57 N.Y.2d 230, 235, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982).

According to New York law, "[w]hether a claimed injury meets the statutory definition of a 'serious injury' is a question of law which may properly be decided by the court on a motion for summary judgment." Martin v. Schwartz, 308 A.D.2d 318, 319, 766 N.Y.S.2d 13, 15 (1st Dep't 2003) (citing Licari, 57 N.Y.2d at 237). Nine categories of injuries may constitute a "serious injury" under the statute:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss or use of a body organ, member, function or system; permanent consequential limitation of a use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d) (McKinney 1998).

To demonstrate that her injuries are "serious injuries" entitling her to recovery under the no-fault statute, plaintiff must demonstrate that her injuries fall into one of the nine statutory categories. Plaintiff here does not complain of any injury resulting in dismemberment; significant disfigurement; a fracture; loss of a fetus, or a permanent

4

loss or use of a body organ, member, function or system. The issue, then, is whether she suffered: 1) a permanent consequential limitation of use of a body organ or member; 2) a significant limitation of use of a body function or system; or 3) an inability to attend to her usual activities for a period in excess of 90 days during the first 180 days following the accident.

Summary judgment against a plaintiff who seeks recovery under New York Insurance Law is appropriate when the evidence would not warrant a jury finding that the injury falls within one of the nine statutory categories. Licari, 57 N.Y.2d at 230. Thus, once a defendant establishes a prima facie case that plaintiff's injuries are not serious, the burden shifts to plaintiff to demonstrate that she has endured a serious injury. Morrone, 1998 WL 872419 at *2 (citing Gaddy v. Eyler, 79 N.Y.2d 955, 582 N.Y.S.2d 990, 991, 591 N.E.2d 1176 (1992)). A plaintiff may defeat summary judgment through admissible evidence in the form of sworn affidavits by physicians. Morrone, 1998 WL 872419 at *2 (citing Bonsu v. Metro. Suburban Bus Auth., 202 A.D.2d 538, 610 N.Y.S.2d 813, 813-14 (2d Dep't 1994); McLoyrd v. Pennypacker, 178 A.D.2d 227, 577 N.Y.S.2d 272, 273 (1st Dep't 1991), appeal denied, 79 N.Y.2d 754, 581 N.Y.S.2d 665, 590 N.E.2d 250 (1992)). Defendants' summary judgment motion may be premised on unsworn reports by plaintiff's physicians, but defendants must provide evidence from their own physicians in the form of sworn affidavits. Williams v. Ritchie, 139 F. Supp. 2d 330, 334 (E.D.N.Y. 2001) (citing McGovern v. Walls, 201 A.D.2d 628, 607 N.Y.S.2d 964 (2d Dep't 1994); Looney v. Epervary, 194 A.D.2d 591, 599 N.Y.S.2d 989, 989–90 (2d Dep't 1993)).

### A. Defendants' Prima Facie Showing

In support of their motion for summary judgment, defendants submit sworn affidavits from two physicians: Dr. Alan J. Zimmerman and Dr. Joseph C. Elfenbein. See Kondulis Aff. Ex. H-K.

Dr. Elfenbein examined Tenzen three times between December 29, 2008 and March 25, 2009, diagnosing her with a cervical sprain. Id. Ex. I-K. At all three examinations, he observed a "full range of motion of the cervical spine" with flexion to 45 degrees (45-60 normal), extension to 45 degrees (45-60 normal), bilateral rotation to 70 degrees (70-90 normal), and bilateral bending to 45 degrees (45-60 normal). Id. He prescribed physical therapy but found "she may work and carry out activities of daily living without restrictions or limitations" and "there is no need for household help, special supplies, or special transportation." Id. Ex. I. At the third examination, Dr. Elfenbein concluded that her cervical and shoulder sprains were resolved, no further treatment was needed, and "there is no evidence of an orthopedic disability." Id. Ex. K.

Dr. Zimmerman examined Tenzen once, on October 5, 2010. Kondulis Aff. Ex. H. Dr. Zimmerman observed that Tenzen moved her head "freely" during questioning and exhibited "normal muscle contours without spasm or atrophy." Id. By sixteen different measurements, Dr. Zimmerman recorded plaintiff's range of motion in her cervical spine and shoulders was within the normal range. Id. He observed she "perform[ed] routine activities without difficulty" and "examination of the cervical spine reveals normal muscle contours without spasm or atrophy." Id. A neurological exam revealed "Motor strength is 5/5 in all groups tested." Id. Dr. Zimmerman concluded that

6

plaintiff had suffered from a cervical sprain that had resolved and "There is no disability. There is no permanency." Kondulis Aff. Ex. H.

This evidence is sufficient to establish defendants' prima facie case that plaintiff did not sustain a "serious injury" with regard to the significant limitation and permanent consequential injury claims. A prima facie showing is satisfied when an examining physician affirms that no serious injury exists. See Davis v. Ogando, No. 09 Civ. 2761 (SMG), 2011 WL 4975379, at * 3 (E.D.N.Y. Oct. 19, 2011) (citing Toure v. Avis Rent A Car Sys. Inc., 98 N.Y.2d 345, 352, 746 N.Y.S.2d 865, 774 N.E.2d 1197 (2002); Gaddy, 79 N.Y.2d at 956-57). Both physicians' affirmations meet this standard.

Defendants have also established a prima facie case that plaintiff was not unable to attend to her usual activities for a period in excess of 90 days during the first 180 days following the accident. This ninety-day requirement is to be construed literally and is a necessary condition to bringing a claim. Tsveitel v. Geoghegan, No. 05 Civ. 5721 (DGT), 2009 WL 2182379, at *4 (E.D.N.Y. July 21, 2009) (citing Licari, 57 N.Y.2d at 236). Here, defendants rely on Jamie Tenzen's own deposition testimony, in which she stated that she returned to work the day after the accident and did not miss any days of work as a direct result of the accident. Kondulis Aff. Ex. G at 33, 40. The only days of work Tenzen missed were due to an allergic reaction to epidural steroids first administered September 23, 2009, beyond the 180 day limit. Even if those injections had occurred within the 180 days, courts have repeatedly held that plaintiffs cannot satisfy the "90/180" requirement where they have missed only a few days of work following the accident. See, e.g., id. (home confinement for seven days did not satisfy statute); Beccarino v. Szadura, No. 08 Civ. 1090 (LDW), 2009 WL 2474105, at *2 (E.D.N.Y. Aug.

10, 2009) (two week absence from work did not satisfy statute); Licari, 57 N.Y.2d at 238 (twenty-four day absence from work, followed by resumption of plaintiff's usual taxi driving schedule did not satisfy statute); Szabo v. XYZ, Two Way Radio Taxi Assoc., 267 A.D.2d 134, 135 (1999) (two week absence from work, coupled with limitations with respect to plaintiff's computer work and her inability to hold small things the way she used to, did not meet statute); Jones v. Gooding, 50 A.D.3d 968, 968, 856 N.Y.S.2d 661 (2d Dep't 2008) (one day absence from work did not satisfy statute); Hernandez v. Cerda, 271 A.D.2d 569, 570, 707 N.Y.S.2d 332 (2d Dep't 2000) (two week absence from work, followed by return to full-time employment, did not satisfy statute).  An absence from work of four days clearly does not fulfill the statutory requirement.

### B. Plaintiff's Rebuttal

Since defendants have offered medical evidence that, if credited, establishes the accident did not cause any serious injury, the burden shifts to plaintiff.  In order to refute defendants' showing and establish that she sustained a serious injury, plaintiff must submit "'objective proof,' such as 'an expert's designation of a numeric percentage of a plaintiff's loss of range of motion' or '[a]n expert's qualitative assessment of a plaintiff's condition . . . , provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system.'"  Suarez v. Abe, 4 A.D.3d 288, 289, 772 N.Y.S.2d 317 (2004) (quoting Toure, 98 N.Y.2d at 350).  "Such an 'objective basis' for the expert's assessment may be provided by, for example, competent interpretations of MRI or CT scans."  Id.

In opposition to defendants' evidence, plaintiff submitted sworn affirmations from three physicians and a chiropractor.[2]  See Opp. Aff. Ex. B, D, E & F.

**1.  Dr. Andrew Merola**

Tenzen was examined by Dr. Andrew Merola once, on October 27, 2008, shortly after the accident.  Opp. Aff. Ex. B.  She complained of pain in her neck and left shoulder, accompanied by numbness, and he observed a loss of motion in her neck and shoulders.  Id.  Dr. Merola referred Tenzen to Dr. Douglas Schwartz for physical therapy and ordered an MRI, which revealed a herniated disk at the C5-C6 segment.  Id.; Opp. Aff. Ex. C.

**2.  Dr. Douglas Schwartz**

Dr. Schwartz treated Tenzen for approximately four months, from November 6, 2008 to February 13, 2009.  Opp. Aff. Ex. D.  During that time Tenzen underwent physical therapy three times per week.  Trans. 25-28.  On four separate occasions, Dr. Schwartz conducted a lateral flexion test and a rotation test of Tenzen's range of motion in her neck and shoulders.  Opp. Aff. Ex. D.  These tests indicated that for the four months that Dr. Schwartz treated her, Tenzen consistently exhibited a 50% loss of range of lateral flexion and a 62.5% loss of range of rotation on both left and right sides.  Id.

---

[2] As a chiropractor, Paul Salinas possesses a Doctor of Chiropractic ("D.C.") degree.  The weight to be accorded the testimony of a chiropractor, as opposed to those with a medical degree ("M.D."), is not without controversy.  See, e.g., Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir. 1995) (discussing, in the social security context, conflicting opinions on whether chiropractors are an acceptable source of medical information); Barnable v. First Fortis Life Ins. Co., 44 F. Supp. 2d 196, 204 (E.D.N.Y. 1999)("A chiropractor is not a medical doctor and a chiropractic opinion is not accorded the same weight and respect as a formal medical opinion.").  However, in the context of the New York No Fault Statute, a chiropractor's affidavit can constitute sufficient evidence to establish a "serious injury" occurred.  See, e.g., Clervoix v. Edwards, 10 A.D.3d 626, 781 N.Y.S.2d 690 (2d Dep't 2004) (chiropractor's affidavit specifying permanent, decreased range of motion, along with MRI evidence of herniated discs held sufficient to defeat summary judgment).

Dr. Schwartz also recorded that "sensation to light touch/pinprick was diminished at the right C5 & C6 dermatomes, muscle strength was 4+/5 at the cervical paraspinals." Id. Dr. Schwartz stated "it is my opinion, with a reasonable degree of medical certainty, that Ms. Tenzen has sustained a significant and permanent limitation to his [sic] cervical spine as a direct result of the motor vehicle accident on October 23, 2008." Id.

### 3. Dr. Arden M. Kaisman

Dr. Kaisman examined Tenzen twice, on September 10, 2009 and May 12, 2011. Opp. Aff. Ex. F. ¶¶ 4-5. On both occasions, Tenzen complained of neck pain and numbness in her left hand. Kaisman performed range of movement tests, finding the following loss of movement:

| Date | ROM | Normal | Range of Motion | Degree Loss | Percent Loss |
|---|---|---|---|---|---|
| 9/10/09 | Flexion | 45 | 35 | 10 | 22.2% |
| 5/12/11 | Flexion | 45 | 35 | 10 | 22.2% |
| 9/10/09 | Extension | 45 | 35 | 10 | 22.2% |
| 5/12/11 | Extension | 45 | 30 | 15 | 33.3% |
| 9/10/09 | Left Rotation | 80 | 50 | 30 | 37.5% |
| 9/10/09 | Right Rotation | 80 | 50 | 30 | 37.5% |
| 5/12/11 | Left Rotation | 80 | 50 | 30 | 37.5% |
| 5/12/11 | Right Rotation | 80 | 50 | 30 | 37.5% |

Id. ¶ 6. Dr. Kaisman prescribed cortisone steroid injections into Tenzen's cervical spine, performed under local anesthetic. Id. Ex. F ¶ 8-9 & Ex. G. Tenzen was given injections on September 23, 2009 and October 7, 2009 but ceased the treatment after the injections caused serious side effects. Opp. Aff. Ex. F ¶ 9. Dr. Kaisman concluded in his affirmation that "the patient had no improvement of her pain. A permanent disability is noted in the cervical spine." Id. ¶ 12.

### 4. Dr. Paul M. Salinas

Salinas, a chiropractor, examined Tenzen on March 13, 2009, at which time she complained of neck pain and numbness in her left hand. Opp. Aff. Ex. E. A range of motion examination on March 13, 2009 indicated Tenzen suffered the following loss of motion:

| ROM | Normal | ROM Found | Degree of Loss |
|---|---|---|---|
| Flexion | 45 | 40 | 5 |
| Extension | 45 | 20 | 25 |
| R. Lateral Flexion | 45 | 30 | 15 |
| L. Lateral Flexion | 45 | 30 | 15 |
| R. Rotation | 80 | 50 | 30 |
| L. Rotation | 80 | 60 | 20 |

Salinas treated Tenzen with chiropractic manipulation on March 23, March 25, March 27, and March 30, 2009, with "mild to little improvement." Id. Salinas concluded "Ms. Tenzen has sustained a significant and permanent limitation to her cervical spine." Id.

### 5. Permanent Consequential Limitation and Significant Limitation

To establish a permanent consequential limitation of the use of a body organ or member, a plaintiff must demonstrate, through competent medical evidence, that her injury was both permanent and consequential. See Tsveitel, 2009 WL 2182379 at *13 (citing Kordana v. Pomellito, 121 A.D.2d 783, 784, 503 N.Y.S.2d 198 (3rd Dep't 1986)). "In the context of the N.Y. Insurance Law, the term 'consequential' means 'important' or 'significant.'" Id. (quoting Kordana, 121 A.D.2d at 784, 503 N.Y.S.2d 198). Thus, a plaintiff must demonstrate "'something more than . . . a minor, mild or slight limitation of use.'" Ventra v. United States, 121 F. Supp. 2d 326, 333 (S.D.N.Y. 2000) (quoting Licari, 57 N.Y.2d at 236.

To establish a "significant limitation of use of a body function or system," plaintiff must show "something more than a minor limitation of use. . . . A minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute." Licari, 57 N.Y.2d at 236. "While a 'significant limitation' does not have to be permanent to qualify as such, its significance is measured in both 'degree and duration.'" Jones v. United States, 408 F. Supp. 2d 107, 120 (E.D.N.Y.2006) (quoting Gualtieri v. Farina, 283 F. Supp. 2d 917, 925 (S.D.N.Y. 2003)).

To substantiate these claims and refute defendants' prima facie case, "[p]laintiff must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury." Yong Qin Luo v. Mikel, 625 F.3d 772, 777 (2d Cir. 2010) (citing Son v. Lockwood, 07 Civ. 4189 (JMA), 2008 WL 5111287, at *5-6 (E.D.N.Y. Nov. 26, 2008)). "To prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. . . . An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function, or system." Toure, 98 N.Y.2d at 350 (emphasis in original) (citations omitted). It is not enough merely to demonstrate that Tenzen suffered a herniated disk. See Uddin v. Cooper, 32 A.D.3d 270, 271 (1st Dep't 2006) (evidence of herniated disk without evidence of permanent consequential limitation insufficient to create issue of fact concerning existence of serious injury); Kearse v. New York City Tr. Auth., 789 N.Y.S.2d 281 (1st Dep't 2005)

("[A] disc bulge or herniation must be accompanied by objective evidence of the extent of alleged physical limitations resulting from the disc injury.").

Here, Drs. Schwartz, Kaisman, and Salinas made specific, numeric measurements of Tenzen's loss of range of motion as a result of the accident, ranging from a 10% to 60% loss. These are the type of measurements necessary to meet plaintiff's burden of proof. See, e.g., Toure, 98 N.Y.2d at 350 ("an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury") (internal citations omitted); Mendola v. Demetres, 212 A.D.2d 515, 515, 622 N.Y.S.2d 309, 310 (2d Dep't 1995) (physician's specific measurements of limited range of thoraco/lumbar motion in all directions was sufficient to defeat summary judgment) (internal citations omitted). All four affirmations also concluded that Tenzen's loss of range of motion was permanent.

The percentage of Tenzen's loss of motion recorded by Drs. Schwartz, Kaisman, and Salinas is also significant enough to demonstrate a "serious injury." Dr. Schwartz recorded a 50% loss of lateral flexion and a 62% loss of rotation; Dr. Kaisman a 22% loss of flexion and a 37% loss of rotation; and Salinas a loss of 30% lateral flexion and 25-30% rotation. "While there is no set percentage for determining whether a limitation in range of motion is sufficient to establish "serious injury," the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." Hodder v. United States, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (citing Thompkins v. Santos, No. 98 Civ. 4634, 1999 WL 1043966, at *6 (S.D.N.Y. Nov.16, 1999) (holding that a triable issue of fact existed where the physician's report indicated a 20 degree loss of mobility in the lumbar spine and a 10 degree loss of mobility in the

13

cervical spine); Amofa v. N.S.C. Leasing Corp., 247 A.D.2d 289, 668 N.Y.S.2d 460 (1st Dep't 1998) (finding 25% loss of spinal range of motion significant); Livai v. Amoroso, 239 A.D.2d 565, 658 N.Y.S.2d 973 (2d Dep't 1997) (finding 20% restriction of motion in cervical spine significant); Bates v. Peeples, 171 A.D.2d 635, 635, 566 N.Y.S.2d 659, 660 (2d Dep't 1991) (affirming denial of summary judgment where plaintiff had suffered a restriction of "flexion 40 degrees, extension 10 degrees, lateral bending 10 degrees")).

Taken together with evidence of a herniated disk recorded by the MRI, plaintiff's physicians' affirmations raise genuine issues of material fact. Pfeiffer v. Mavretic, 2007 WL 2891433, at *7 (W.D.N.Y. Sept. 28, 2007) ("It has been consistently held that a measure of limitation, together with an MRI or other formal objective test, is sufficient to create a genuine issue of material fact." (citations omitted)); see, e.g., Pommels v. Perez, 4 N.Y.3d 566, 577, 830 N.E.2d 278, 285 (N.Y. 2005) (doctor's opinion that plaintiff suffered severe and permanent injuries, supported by measurements of loss of range of motion and an MRI revealing herniated discs, held sufficient to defeat summary judgment); Clervoix v. Edwards, 10 A.D.3d 626, 781 N.Y.S.2d 690 (2d Dep't 2004) (treating chiropractor's affidavit specifying decreased range of motion, along with evidence of herniated and bulging discs confirmed by MRI, held sufficient to defeat summary judgment). For these reasons, summary judgment must be denied as to whether plaintiff suffered 1) a permanent consequential limitation of use of a body organ or member; and 2) a significant limitation of use of a body function or system.

### 6. 90/180 Requirement

To demonstrate Tenzen suffered a "serious injury" which prevented her from performing "substantially all" of her daily activities for a period of 90 days out of the 180

14

days after the accident, plaintiff relies on only her deposition testimony. Opp. Aff. at 20. Plaintiff did not submit any medical evidence that she is unable to conduct ordinary activities or must restrict her physical activities in any way.

Tenzen's allegations that her injuries fall within this category must be substantiated by objective medical proof; self-serving statements are insufficient to raise a triable issue of fact. Hyacinthe v. United States, 05 Civ. 1363 (KAM), 2009 WL 4016518, at *12 (E.D.N.Y. Nov. 19, 2009) ("objective medical findings" are required to prove 90/180 impairment) (citations omitted); Williams v. Ritchie, 139 F. Supp. 2d 330, 341 (E.D.N.Y. 2001) ("Mere allegations of limitation of body functions without medical proof are insufficient to demonstrate the existence of a genuine factual issue." (quotation omitted)). Plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment. Madden v. Lee, 01 Civ. 7856 (GWG), 2002 WL 31398951, at *6 (citing Morris v. Pascall, 259 A.D.2d 602, 686 N.Y.S.2d 796 (2d Dep't 1999)); Gualtieri, 283 F.Supp.2d at 925 (no prima facie case of serious injury under the 90/180 category where plaintiff's "self-serving testimony that she can no longer clean her house or hold her baby for long periods of time . . . is unsubstantiated").

However, even if Ms. Tenzen's deposition testimony were sufficient, it does not represent a "serious injury" under the 90-out-of-180-day rule. To make this showing, "plaintiff must prove that she was 'curtailed from performing [her] usual activities to a great extent rather than some slight curtailment.'" Gaddy, 79 N.Y.2d 955 at 958 (quoting Licari, 57 N.Y.2d at 236). Here, as in Gaddy and Licari, plaintiff's usual activities were impeded slightly. She returned to work the day after the accident, was not absent any days during the first 180 days following the accident, and continues to

15

maintain her position as a retail administrator. Kondulis Aff. Ex. G at 39-40. Her contention regarding her personal activities similarly falls short: plaintiff alleges she sometimes has difficulty dressing herself and her six-year-old daughter cannot hang on her neck. This does not meet the statute's "substantially all" requirement. See Cooper v. Dunn, No. 99 Civ. 6903 (ILG), 2001 WL 138864, at *36 (E.D.N.Y. Jan. 2, 2001) (plaintiff's inability to play basketball or do push-ups are "simply not losses for which recovery is permitted" (citation omitted)); Gaddy, 167 A.D.2d 67 at 70-71 (plaintiff's delegation of some household duties to daughter insufficient to defeat summary judgment); Licari, 57 N.Y.2d at 234 (plaintiff's testimony that he was unable to help his wife with some household chores and experienced occasional headaches and dizzy spells not substantial curtailment of daily activities); Flores v. Singh, 13 A.D.3d 203, 204, 786 N.Y.S.2d 491 (1st Dep't 2004) (some difficulty getting dressed, inability to swim, and one-day absence from work not substantial curtailment of daily activities). Consequently, no reasonable jury could find that plaintiff suffered a "serious injury" under the 90-out-of-180 day rule and defendants' motion for summary judgment is granted as to this claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted as to plaintiff Jessica Tenzen and granted as to plaintiff Jamie Tenzen's claim of serious injury under the 90-out-of-180-day rule. Defendants' motion for summary judgment is denied as to plaintiff Jamie Tenzen's other claims.

**SO ORDERED.**

Dated:   Brooklyn, New York
         December 5, 2011

                                          _/s/_____
                                          I. Leo Glasser, U.S.D.J.